## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| *CALEB B.,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )      *No. 2:17-cv-00322-DBH* |
| | ) |
| *NANCY A. BERRYHILL,* | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
| *Defendant* | ) |

## RECOMMENDED DECISION ON MOTION FOR REMAND
## AND STATEMENT OF ERRORS[1]

The plaintiff challenges an administrative law judge's ("ALJ's") finding that, for purposes

of his Social Security Disability ("SSD") and Supplemental Security Income ("SSI") claims, he

was not disabled prior to April 16, 2015, and seeks remand on the basis of the submission of

evidence that he argues is new and material, *see* Motion To Remand on Behalf of Plaintiff []

("Motion for Remand") (ECF No. 24) and, in the alternative, on the basis that the ALJ erred in

evaluating both the medical opinion evidence and his statements concerning his symptoms and

limitations, *see* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 6-

13.  For the reasons that follow, I conclude that the evidence that the plaintiff proffers is neither

new nor material and that the ALJ committed no reversible error in weighing the opinion evidence

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

or in assessing the plaintiff's statements. Hence, I recommend that the court deny the Motion To Remand and affirm the commissioner's decision.

## I. The ALJ's Decision

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, Finding 1, Record at 22; that, since his alleged onset date of disability, January 17, 2013, he had the severe impairments of multiple sclerosis ("MS"), cervical/lumbar degenerative disc disease, psoriatic arthritis, major depressive disorder, and cognitive disorder, Finding 3, *id.*; that, prior to April 16, 2015, the date on which he became disabled, he did not have an impairment or combination of impairments that met or medically equaled the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Finding 4, *id.*; that, prior to April 16, 2015, he had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that he could lift/carry up to 10 pounds frequently and occasionally, sit for two hours at a time for a total of six hours in an eight-hour workday, stand for one hour at a time for a total of two to three hours in an eight-hour workday, walk for 15 to 30 minutes at a time for a total of two to three hours in an eight-hour workday, perform up to occasional overhead reaching-pushing-pulling bilaterally and up to occasional pushing-pulling of foot controls bilaterally, needed a handrail for occasional climbing of stairs, could not climb ladders/scaffolds, could occasionally stoop, balance, and kneel, could not crouch or crawl, could have up to occasional exposure to moving mechanical parts but no exposure to unprotected heights or dangerous machinery, could drive occasionally but do no commercial driving, could have no exposure to extreme cold/heat, and had a limitation in concentration/persistence/pace with an ability to understand, carry out, and remember only simple

tasks, and a limitation in social functioning requiring object-oriented tasks with only up to occasional work-related interaction with the general public, Finding 5, *id*. at 23; that, considering his age prior to April 16, 2015 (a younger individual), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could have performed, Findings 7-10, *id*. at 27; and that he, therefore, had not been disabled at any time through December 31, 2014, his date last insured, for purposes of his SSD claim or at any time prior to April 16, 2015, for purposes of his SSI claim, filed on December 18, 2013, Finding 14, *id*. at 29. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

## II.  Motion for Sentence Six Remand

### A.  Applicable Legal Standard

Sentence six of 42 U.S.C. § 405(g) provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g).

Typically, a request for a sentence six remand concerns "new evidence . . . tendered after the ALJ decision." *Mills v. Apfel,* 244 F.3d 1, 5 (1st Cir. 2001) (citation and internal quotation marks omitted). Sentence six allows for a "pre-judgment remand" and obviates a ruling on the existing administrative decision based on the existence of good cause for remanding for further evidentiary proceedings. *See, e.g*., *Seavey v. Barnhart,* 276 F.3d 1, 13 (1st Cir. 2001); *Freeman v. Barnhart,* 274 F.3d 606, 610 (1st Cir. 2001).

On a cautionary note, the First Circuit has observed that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided — to the end that the process not bog down and unduly impede the timely resolution of social security appeals." *Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir. 1987). Thus, prejudgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is new and "material," as in "necessary to develop the facts of the case fully[.]" *Id.* at 139.

New evidence of an infirmity or impairment is not automatically material. The party seeking remand must show that the evidence is not merely cumulative and that consideration of the evidence is essential to a fair hearing, *see id.*; in other words, that the earlier decision "might reasonably have been different" had the evidence been considered by the commissioner, *id.* at 140 (citation and internal quotation marks omitted). There is a temporal concern, as well. The evidence must be material to the issue of "the claimant's condition during the time period for which benefits were denied[,]" as opposed to the development of a new disability. *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988).

### B. Discussion

The plaintiff seeks a sentence six remand on the basis that, although he requested that the ALJ incorporate his file from a prior unsuccessful claim for disability benefits into the record in this case, and the ALJ assured his counsel that she had the prior file, she neither included the file in the record nor referred to it in the instant decision. *See* Memorandum of Law in Support of Motion To Remand on Behalf of Plaintiff [] ("Remand Memo") (ECF No. 24-1), attached to Motion To Remand, at 2-6. He appends to his motion 243 pages of documents that he represents constitute the prior claim file. *See id.* at 1; Exh. One ("Prior Claim File") (ECF No. 24-2) to Motion To Remand.

The plaintiff contends that the prior file is both new and material and that he has shown good cause for its omission from the record before the ALJ. *See* Remand Memo at 2-6; Reply in Support of Motion To Remand on Behalf of Plaintiff [] ("Remand Reply") (ECF No. 27) at 1-5. The commissioner disputes that any of these tests is met. *See* Defendant's Response to Plaintiff's Motion for Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g) ("Remand Response") (ECF No. 26) at 2-8. I agree that the plaintiff has failed to demonstrate either the newness or the materiality of the proffered documents. Because each of these shortcomings is independently fatal to his bid for remand pursuant to section six, I do not reach the question of whether he has shown good cause for the omission of the prior claim file from the record.

### 1. Newness of Old Claim File

As the commissioner observes, *see id*. at 3, the prior claim file is not "new" in that the documents contained therein were considered in connection with an adverse ALJ decision dated November 29, 2012, which became administratively final when the plaintiff filed no appeal of the Appeals Council's December 6, 2013, denial of his request for review, *see* Record at 98-107, 113-16.

The plaintiff responds that:

1. Because the commissioner refused to agree to his request to supplement the record before this court with the contents of the prior claim file, his only recourse was to file the instant motion. *See* Remand Reply at 1-2 (describing motion as "the only appropriate procedural mechanism for requesting that the Court consider providing relief on the basis of evidence that *was* presented to the ALJ and nevertheless not considered by the ALJ or included in the administrative record filed with the Court") (emphasis in original).

2.      The ALJ had an affirmative duty to develop the record, and her failure to do so requires remand.  *See id*. at 2.

3.      The longitudinal history contained in the prior claim file was relevant to the instant claims.  *See id*.

None of these arguments bears on the "newness" of the prior claim file.

In any event, although neither side cites caselaw for the proposition that a prior claim file does or does not meet the "newness" standard for purposes of a sentence six remand, my research reveals that at least one court has addressed the issue, concluding that it does not.  In that case, as here, the claimant contended that evidence from her prior claim file "was wrongfully withheld from the administrative record by the [c]ommissioner and . . . constitutes new evidence material to the matter of her mental retardation on this claim."  *Crist v. Astrue*, No. 8:06-cv-1587-T-26TBM, 2008 WL 821934, at *6 (M.D. Fla. Mar. 26, 2008).  The court rejected that argument, concluding, "Simply stated, the records from Plaintiff's prior claim are not 'new evidence' in contemplation of the new evidence standard discussed above[.]").  *Id*. at *8.  *See also, e.g., Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) ("The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from a sentence four remand], appropriate when the district court learns of evidence *not in existence or available to the claimant at the time of the administrative proceeding* that might have changed the outcome of that proceeding.") (footnote omitted) (emphasis added).  The prior claim file was both in existence and available to the plaintiff at the time of the administrative proceeding.

On the showing made, the plaintiff fails to demonstrate that the evidence was "new."

## 2. Materiality of Old Claim File

Even assuming that the prior claim file qualified as "new" for purposes of sentence six, the plaintiff's motion for remand pursuant thereto would founder on the materiality prong of the analysis.

The plaintiff argues that the claim file is material because:

1.      The ALJ relied primarily on the testimony of medical expert of John A. Pella, M.D., at hearing on March 17, 2016, (ii) Dr. Pella testified that, prior to April 2015, the plaintiff's cognitive defect was "'mild'" and "'the other issues [we]re primarily subjective[,]'" and (iii) a report of a neuropsychological evaluation and testing completed at the Brain Clinic of Central Maine ("Brain Clinic") in April 2011, contained in the prior claim file, provided an objective diagnosis of a cognitive disorder and indicated that the plaintiff "'demonstrated weaknesses and/or impairments in some aspects of mental processing speed, complex attention skills, and sustained attention skills.'"  Remand Memo at 4-5 (quoting Prior Claim File at Page ID ## 779-80).

2.      The ALJ gave "'little probative weight'" to the opinions of treating neurologist James Stevenson, M.D., who expressly referenced the April 2011 Brain Clinic evaluation as a basis for those opinions.  *Id*. at 5 (quoting Record at 26).

3.      The prior claim file contained (i) May 2011 opinions of Dr. Stevenson that were consistent with his later opinions, as well as Dr. Stevenson's contemporaneous treatment records, and (ii) an August 2012 opinion of treating physician Timothy T. Goltz, M.D., that the plaintiff had greater limitations than assessed by the ALJ, precluding the performance of the full range of work even at the sedentary level, as well as Dr. Goltz's contemporaneous treatment records.  *See id*.; *see also, e.g*., Prior Claim File at 678-80 (medical source opinion (physical) of Dr. Goltz dated

August 1, 2012), 687-90 (MS medical source statement of Dr. Stevenson dated May 5, 2011), 773-74 (medical source opinion (mental) of Dr. Stevenson dated May 10, 2011).

However, as the commissioner rejoins, *see* Remand Response at 5-6, the plaintiff fails to demonstrate that this evidence, all of which predated the alleged onset date of disability and was considered in connection with the prior adverse ALJ decision, might reasonably have been outcome-determinative in this case.

First, the April 2011 Brain Clinic report indicated that nearly all of the plaintiff's cognitive skills were in the average range and that he had a "Mild Neurocognitive Disorder[,]" Prior Claim File at Page ID ## 779-80, consistent with Dr. Pella's description of his cognitive disorder prior to April 2015, as "mild[,]" Record at 86. Thus, the Brain Clinic report does not call into question the ALJ's decision to accord greater weight to the opinions of Dr. Pella than those of Dr. Stevenson.[2]

Second, while the plaintiff notes the presence of the Stevenson and Goltz opinions and progress notes in the prior claim file, he fails to explain how the inclusion of those materials in the record before the ALJ could have made a dispositive difference. *See* Remand Memo at 5-6. Because this issue is "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," it is "deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

The plaintiff, thus, also fails to demonstrate that his prior claim file was material.

Accordingly, a sentence six remand is unwarranted on the showing made.

---

[2] In his reply brief, the plaintiff emphasizes that the Brain Clinic provided "an objective diagnosis of a cognitive disorder" with "'demonstrated weaknesses and/or impairments[.]'" Remand Reply at 4 (quoting Prior Claim File at Page ID # 779). However, Dr. Pella acknowledged that the plaintiff had a cognitive disorder, *see* Record at 86, and the ALJ found at Step 2 that he had a severe medically determinable cognitive disorder, *see* Finding 3, *id*. at 22. As noted above, while Dr. Pella characterized the cognitive impairment as "relatively mild" prior to April 2015, *id*. at 86, his testimony is not clearly undermined by the Brain Clinic report, which indicates that the plaintiff was diagnosed with a "Cognitive Disorder Not Otherwise Specified (*Mild* Neurocognitive Disorder secondary to Multiple Sclerosis)." Prior Claim File at Page ID # 780 (emphasis added).

### III.  Statement of Errors

### A.  Applicable Legal Standard

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Yuckert*, 482 U.S. at 146 n.5.  At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

### B.  Discussion

The plaintiff alternatively seeks remand on the basis that, on the record before her, the ALJ erred in giving less weight to the opinions of Dr. Stevenson than those of Dr. Pella and in

evaluating his testimony concerning his symptoms and limitations in determining his RFC. *See* Statement of Errors at 1. His motion for remand on this basis is also unavailing.

## 1. Weighing of Opinion Evidence

### a. Factual Background

The record contains letters dated January 28, 2013, and October 22, 2015, from Dr. Stevenson, the neurologist who had treated the plaintiff since 2008. *See* Record at 555-56, 563. In his 2013 letter, Dr. Stevenson stated, in relevant part:

> Over the course of 5 years despite therapies, [the plaintiff] has developed quite typical MS-related fatigue as well as cognitive impairment. These "invisible" MS symptoms are common in patients afflicted by the disease. In fact, fatigue is the single most common symptom in patients with multiple sclerosis. Cognitive impairment is the most common disabling symptom of the disease.

> Formal neuropsychological testing performed at the brain clinic at Central Maine 4/4/2011 demonstrated overall average IQ, but impairments of processing speed, complex attention, and sustained attention. Again these findings are very characteristic of people with multiple sclerosis and, especially difficulty to maintain attention, are disabling from any sustained work activity.

> The fatigue of MS is more than just sleepiness. It is a lassitude of uncertain etiology, possibly related to underlying inflammatory disease of the brain which is ongoing despite currently available therapies. This fatigue robs patient[]s of the energy necessary for physical or mental activities.

> Thus, [the plaintiff's] disability is entirely consistent with known features of his disease. These disabilities can only be expected to worsen in time as there is no cure for the disease. In my opinion he is now completely and permanently disabled by his disease.

*Id*. at 555.

In his 2015 letter, Dr. Stevenson stated, "Unfortunately, [the plaintiff's] response to therapies has been suboptimal and he has sustained significant cognitive as well as physical disability." *Id*. at 563. Turning first to the plaintiff's physical condition, he explained that, in addition to MS-related impaired vision in his left eye and impaired left arm function:

> Over the past summer [the plaintiff] had a new exacerbation affecting his spinal cord which has caused weakness and impaired sensation in his right arm as well as right arm spasticity. He also suffers pain in his right shoulder and arm which is responsive to medication but he requires regular dosing of Vicodin for pain control.
>
> Also, since the exacerbation this summer he staggers when he walks due to weakness and numbness and poor coordination of his right leg.

*Id*.

He added that the plaintiff suffered from significant MS-related fatigue and impaired cognition, was "no longer able to multitask" and had "short-term memory difficulty." *Id*. He described the deficits noted in the 2011 Brain Clinic report as "characteristic of individuals with MS" and causing the plaintiff "to have difficulty maintaining attention which disables him from any sustained work activity." *Id*. He noted that the plaintiff had "resumed infusion therapy to lessen the likelihood of further attacks despite the known risk associated with this particular therapy" and that this treatment, administered every four weeks, "disable[d] him with side effects for a day following infusion." *Id*. He summarized:

> In my opinion, [the plaintiff] is totally and permanently disabled by the combination of physical and cognitive disability caused by his multiple sclerosis. He has poor manual dexterity, his gait is ataxic, he has severe MS related fatigue and he has poor cognition making effective retraining impossible.

*Id*.

The ALJ obtained Dr. Pella's testimony after determining during the plaintiff's October 28, 2015, hearing that she needed to call upon a medical expert in light of evidence, including an MRI report, indicating that he had suffered an exacerbation of his condition in August 2015. *See id*. at 60. The hearing recommenced on January 6, 2016; however, the ALJ explained at the outset that Dr. Pella had been called away for a family emergency. *See id*. at 65. She noted that she had discussed with the plaintiff's counsel whether, in view of Dr. Pella's conclusion that the plaintiff

had become disabled as of August 2015, the plaintiff would be willing to amend his onset date of

disability to that date, but the plaintiff declined to do so. *See id*. at 65-66.

The hearing resumed on March 17, 2016, at which time Dr. Pella testified:

> [The plaintiff] was doing relatively well with intermittent symptoms initially, but
> starting in April of 2014, he developed low back pain, . . . down to the right lower
> extremity. And in June of '15, he became increasingly fatigued with activity. And
> on July of '15, he developed a worsening neck pain and arm pain. In August of
> '15, he had a repeat MRI, and this revealed new lesions in the brain. His MRI of
> the brain had been stable for several years, as a matter of fact. And he had increased
> problems with the dizziness and the cognitive issues, paresthesia, particular[ly] this
> fatigue. And the decision was made to resume intravenous therapy on a monthly
> basis fairly intensively. The side effects he described are somewhat characteristic
> of those infusions.

*Id*. at 75-76. Dr. Pella added that (i) the plaintiff also had a history of low back pain with some

radiation to his right lower extremity, felt to be a piriformis syndrome (a muscle complaint), (ii) a

lumbar MRI performed in April 2015 revealed a small tear at the L5-S1 level, but no definite

radiculopathy, (iii) a rheumatologist diagnosed the plaintiff with psoriatic arthritis in late 2015,

primarily affecting his left shoulder, left elbow, and knees, although he "appeared to have a good

result with methotrexate[,]" and (iv) he had problems with neck pain, with a September 2014 MRI

revealing a bulge at C5-6 and C6-7 and an osteophyte complex compressing the nerve root at C6-

7 to some degree. *Id*. at 76.

He testified that he believed the record supported a finding that the plaintiff's condition

equaled Listing 11.09 as of April 2015 but that, for the period from January 17, 2013, through

April 2015, the plaintiff had a baseline sedentary work capacity with "better days and worse

days[.]" *Id*. at 77. He elaborated:

> Well, the nature of the condition is some days he would be more fatigued, and some
> days less fatigued. Some days are more muscle weakness; other days, less muscle
> weakness. Some days are more cognitive issues; other days, less cognitive issues.
> By sedentary, I believe that's the baseline that he should be able to do sedentary on
> an ongoing basis, despite the varying spikes and valleys in his symptoms.

12

*Id.* at 78.  He detailed a number of specific physical limitations in the plaintiff's functional ability during the period from January 17, 2013, through April 2015.  *See id.* at 77-78.

The ALJ explained that, with respect to the plaintiff's physical disorders prior to April 16, 2015, she gave "substantial weight" to the Pella testimony, "which reflect[ed] that the [plaintiff] [wa]s capable of performing exertionally sedentary type work with some other exertional/nonexertional limitations[,]" and "little probative weight to the opinion of Dr. Stevenson[,] which note[d] that the [plaintiff] [wa]s 'totally and permanently disabled' due to a combination of his physical/cognitive symptoms[,] since this degree of disability [wa]s certainly inconsistent with the physical/mental findings noted in the record as well as inconsistent with the testimony of the medical expert, Dr. Pella, at the hearing relative to the period prior to April 16, 2015."  *Id.* at 26 (citations and footnote omitted) (quoting *id.* at 563).

With respect to the plaintiff's mental disorders, she gave "further probative weight" to the assessment of agency nonexamining consultant Leigh Haskell, Ph.D., "who found that the [plaintiff] had basically 'moderate. . .' limitations in selective areas of understanding, memory, attention, concentration, persistence, pace, social functioning and adaptation while being 'markedly' impaired in the ability to carry out detailed instructions."  *Id.* (citations and footnote omitted) (quoting *id.* at 152-53).  She noted, "In fact, none of the [plaintiff]'s own treating/examining medical sources appear to have placed any ongoing mental limitations on his functioning relative to the depression."  *Id.* (citations omitted).  She gave less weight to Dr. Haskell's finding that the plaintiff had a marked limitation in interacting with the general public and moderate impairment in responding appropriately to supervisors "since these additional restrictions are inconsistent with other substantial evidence of record."  *Id.* at 26 n.7 (citations omitted).

### b. Challenge to ALJ's Analysis

The plaintiff argues that, for a number of reasons, the ALJ's decision to give greater weight to the Pella testimony than to the opinions of Dr. Stevenson is unsupported by substantial evidence. *See* Statement of Errors at 6-11. Yet, an ALJ is tasked with resolving precisely such evidentiary conflicts, *see, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."), and an ALJ's choice to credit the opinions of agency nonexamining consultants over those of treating medical sources is not, in itself, error, *see, e.g., Brown v. Astrue*, No. 2:10-cv-27-DBH, 2010 WL 5261004, at *3 (D. Me. Dec. 16, 2010) (rec. dec., *aff'd* Jan. 4, 2011).

At bottom, the ALJ in this case explained the weight she had afforded the Stevenson and Pella opinions and offered good reasons for discounting those of Dr. Stevenson. No more was required. *See, e.g., Heath v. Astrue*, No. 1:12-cv-99-DBH, 2012 WL 6913440, at *11 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) ("[O]nce the [ALJ] determined that the opinion [of a treating source] was not entitled to controlling weight, he had discretion to reject it, provided that he supplied good reasons for so doing.") (citations and internal quotation marks omitted).

Turning to the specific bases on which the plaintiff faults the ALJ's weighing of the Stevenson and Pella opinions, he falls short of demonstrating harmful error for the reasons that follow:

1. The plaintiff contends that Dr. Pella erroneously testified that the plaintiff was diagnosed with psoriatic arthritis in late 2015, when the record reflects that he was diagnosed with that condition and treated for it by a rheumatologist in late 2013. *See* Statement of Errors at 10. In her brief, the commissioner conceded the error but observed that the plaintiff had failed to

explain why it mattered. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 23) at 6-7. At oral argument, the plaintiff's counsel endeavored to do so, contending that the error was material because the mistaken date of diagnosis aligned with the date on which Dr. Pella found that the plaintiff had become disabled. He asserted that, in turn, the ALJ based her evaluation of the plaintiff's testimony almost entirely on the Pella opinion. However, as counsel for the commissioner rejoined, there is little evidence that the plaintiff's psoriatic arthritis caused functional limitations. Dr. Pella testified that the plaintiff had a "good result" on methotrexate and that his inflammation decreased significantly, Record at 76, and Dr. Stevenson did not cite psoriatic arthritis as a basis for his opinions, *see id.* at 555-56, 563.

2. The plaintiff also argues that Dr. Pella erroneously testified that the plaintiff had not previously taken the medication Tysabri, an infusion medication for exacerbations of MS symptoms that Dr. Pella testified resulted in severe functionally limiting side effects, when the record reflects that he had previously been prescribed that medication for three-and-a-half years. *See* Statement of Errors at 10. At oral argument, the plaintiff's counsel contended that this error was material for the same reason as the error regarding the onset date of psoriatic arthritis: that the mistaken date of first use of Tysabri aligned with the date on which Dr. Pella deemed the plaintiff to have become disabled. Nonetheless, as counsel for the commissioner countered, it is not clear that Dr. Pella was unaware that the plaintiff had previously undergone infusion therapy with Tysabri. In response to the ALJ's question whether the plaintiff had been on Tysabri in the past, he testified, "Well, he started that *again* in September of 2015, when the new lesions appeared and his symptoms worsened." Record at 78-79 (emphasis added). On the other hand, he then stated that he did not "believe [the plaintiff] was exposed to that particular one in the past" and had been "tried on some of the other agents for MS." *Id.* at 79. Regardless, as the commissioner suggests,

*see* Opposition at 8, even if Dr. Pella did believe that the plaintiff did not have prior Tysabri infusion therapy, the mistake cannot be reasonably viewed to have made a material difference. The record indicates that the plaintiff did well with his prior Tysabri infusion therapy. *See id.* at 412-13 (August 20, 2013, notation of Edward Fels, M.D., that plaintiff had last been treated with Tysabri in early August and had "been on this medication since 2010 with a beneficial response"); 506 (June 11, 2014, notation by Dr. Stevenson that plaintiff had previously done well with Tysabri).[3]

3. Third, the plaintiff avers that Dr. Pella admitted that he did not have the exhibit numbers for the evidence of record, suggesting that he might not have reviewed the entire record. *See* Statement of Errors at 10; Record at 84-85. As the commissioner argues, *see* Opposition at 8-9, one cannot fairly infer from Dr. Pella's failure to recall specific exhibit numbers that he did not review the available record, and Dr. Pella's detailed summary of the record evidence, *see* Record at 75-77, suggests otherwise.

4. The plaintiff also complains that, when asked "what evidence in the record contradicted [the plaintiff's] testimony regarding his limitations in concentration, persistence, and pace, and social functioning due primarily to cognitive impairments, Dr. Pella was unable to identify any specific evidence to support his opinion that these limitations were 'not severe' prior to April of 2015." Statement of Errors at 10 (citing Record at 85-86). Dr. Pella did not so testify. As the plaintiff's counsel acknowledged at oral argument, Dr. Pella gave a non-responsive answer to his question whether Dr. Pella saw "any objective evidence in the record that would clearly

---

[3] Beyond this, Dr. Pella described a general decline in the plaintiff's well-being beginning in 2014, testifying that, after a period during which the plaintiff was doing relatively well with intermittent symptoms, he developed low back pain starting in 2014, became increasingly fatigued with activity in June 2015, developed worsening neck and arm pain in July 2015, had a repeat MRI in August 2015 disclosing new brain lesions, and had increased problems with dizziness, cognitive issues, paresthesias, and fatigue. *See* Record at 75-77.

indicate those *limitations* [in concentration, persistence, and pace and social functioning between January 2013 and April 2015] [we]re not present[,]" testifying: "No. . . .  I've conceded *those issues*, just not to a severe degree."  Record at 86 (emphasis added).  Dr. Pella, thus, apparently misconstrued the question as whether he saw any objective evidence indicating that the *impairments* did not exist.  The plaintiff's counsel then stated that he had no further questions.  *See id*. at 86-87.  The plaintiff's reliance on this exchange to demonstrate that Dr. Pella was unable to identify any objective evidence that his *limitations* were not severe, hence, is misplaced.

5.       Finally, the plaintiff argues that the ALJ's assignment of less probative weight to the Stevenson opinions than the Pella opinions was unsupported by substantial evidence because (i) Dr. Pella, whose specialty is general medicine and pulmonary disease, failed to identify specific evidence to support his opinion that the plaintiff's cognitive and social impairments were nonsevere prior to April 16, 2015, *see* Statement of Errors at 10, (ii) Dr. Stevenson, a neurologist, diagnosed the plaintiff with MS in 2008, treated him regularly thereafter, and referenced specific objective testing and clinical findings to support his opinions regarding the plaintiff's cognitive impairments and fatigue, *see id*. at 10-11, (iii) the only specific evidence that the ALJ cited in support of her decision to accord Dr. Stevenson's opinions less probative weight was the Pella testimony, and (iv) the inconsistency of a treating source's opinion regarding a claimant's functional limitations with the opinion of a nonexamining reviewer is not, standing alone, a good reason to accord less weight to the opinion of a treating source, *see id*. at 11.

That some relevant factors weighed in favor of adoption of the Stevenson opinions, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), did not oblige the ALJ to adopt them.  As the commissioner points out, *see* Opposition at 12-13, with respect to the period prior to April 16, 2015, the ALJ discounted Dr. Stevenson's ultimate conclusion that the plaintiff was "'totally and permanently

disabled' due to a combination of his physical/cognitive symptoms" not only because of its inconsistency with the Pella testimony but also because of its inconsistency with "the physical/mental status findings noted in the record[,]" Record at 26 (quoting *id*. at 563).[4] "Inconsistency with other substantial evidence of record, in turn, constitutes a good reason for according a treating physician's opinion little to no weight." *Lee v. Berryhill*, No. 2:17-cv-00040-JHR, 2018 WL 793595, at *2 (D. Me. Feb. 8, 2018) (citation omitted).[5]

## 2. Evaluation of Plaintiff's Testimony

The plaintiff also argues that the ALJ erred in evaluating his testimony regarding his subjective complaints, in violation of Social Security Ruling 16-3p ("SSR 16-3p"). *See* Statement of Errors at 11-13.[6]

The ALJ found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not fully supported prior to April 16, 2015, for the reasons explained in this decision." Record at 25. She then summarized the medical record of evidence, Dr. Pella's testimony, and the plaintiff's activities of daily living. *See id*. at 25-26. With respect to the latter category of evidence, she noted, "In terms of his alleged severe symptoms and

---

[4] The ALJ had earlier summarized that record evidence, noting, in relevant part, that during the period between September 2012 and April 2015, the plaintiff had "largely unremarkable physical/mental status examinations, aside from diffuse dry skin with psoriatic patches" and had "been given diagnoses of 'stable' multiple sclerosis (confirmed on brain MRI studies), cervical/lumbar degenerative disc disease (confirmed on MRI studies), psoriatic arthritis (improved on the medication Methotrexate) and major depressive disorder ('doing well' on medication) with cognitive issues treated basically conservatively, aside from some injection therapy, during this period." Record at 25 (citations omitted).

[5] At oral argument, the plaintiff's counsel further faulted the ALJ's handling of the Stevenson opinions on the basis that she stated that no physician had assessed greater mental limitations, when Dr. Stevenson had primarily assessed limitations in the plaintiff's cognitive functioning. Presumably, the plaintiff's counsel referred to the ALJ's statement that "none of the [plaintiff]'s own treating/examining medical sources appear to have placed any ongoing mental limitations on his functioning relative to the depression." Record at 26 (citations omitted). This observation was confined to limitations flowing from depression. As noted above, the ALJ acknowledged and addressed Dr. Stevenson's opinion that the plaintiff was disabled by a combination of his physical and cognitive symptoms. *See id*.

[6] The commissioner has clarified that SSR 16-3p, which supersedes Social Security Ruling 96-7p ("SSR 96-7p"), applies to decisions issued on or after March 28, 2016. *See* Social Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 Fed. Reg. 49462, 49462-63 (Oct. 25, 2017). The instant decision was issued on April 5, 2016. *See* Record at 29.
.

disabling limitations prior to April 16, 2015, the [plaintiff]'s extensive daily activities, including caring for his son on weekends, performing household chores and continuing to drive, [are] clearly inconsistent with these disabling allegations." *Id*. at 26 (citations omitted).

The plaintiff argues that, in contravention of SSR 16-3p, the ALJ discounted his statements "solely because the objective medical evidence d[id] not substantiate the degree of impairment-related symptoms [he] alleged[.]" Statement of Errors at 12 (quoting SSR 16-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 669). He asserts that this is so because the ALJ's "primary basis" for her evaluation was Dr. Pella's testimony that "the objective medical evidence did not substantiate the degree of impairment-related limitations that he alleged[.]" *Id*.

He adds that, in contravention of SSR 16-3p, the ALJ failed to explain which of his symptoms she found "'consistent or inconsistent with the evidence'" and how her evaluation of his symptoms led to that conclusion. *Id*. at 13 (quoting SSR 16-3p at 672).

Finally, he contends that the ALJ erred in relying on his activities of daily living without considering his testimony that his ability to perform those activities was extremely limited or that, as noted in SSR 16-13p, "'inconsistencies in an individual's statements made at varying times do[] not necessarily mean they are inaccurate.'" *Id*. (quoting SSR 16-3p at 672).

As the commissioner rejoins, *see* Opposition at 14-18, the ALJ's analysis survives scrutiny.

First, the ALJ did not rely solely on Dr. Pella's testimony or on a lack of objective medical evidence in evaluating the plaintiff's subjective complaints. She also relied on the underlying medical evidence of record, the plaintiff's activities of daily living, and the opinion of Dr. Haskell. *See* Record at 25-26.

Second, the ALJ adequately explained her assessment of the plaintiff's claimed symptoms and limitations pursuant to SSR 16-3p. She summarized his allegations, which included "significant concentration/memory/task persistence/social interaction problems with an inability to perform any significant or prolonged hand manipulation, lifting, carrying, sitting, standing or walking[,]" *id.* at 24, and then articulated reasons why, for the period prior to April 16, 2015, she adopted the finding of Dr. Pella that he was "capable of performing exertionally sedentary type work with some other exertional/nonexertional limitations" and the finding of Dr. Haskell that he had "'moderate. . .' limitations in selective areas of understanding, memory, attention, concentration, persistence, pace, social functioning, and adaptation while being 'markedly' impaired in the ability to carry out detailed instructions[,]'" *id.* at 26 (footnote and citations omitted) (quoting *id.* at 152-53).

Finally, in relying in part on the plaintiff's activities of daily living, the ALJ did not ignore his testimony regarding his alleged limitations in performing them. In summarizing his statements, she noted that he claimed that "[a] typical day varies depending on how he feels[,]" "[h]e must lie down during a typical day[,]" and, "[o]n a bad day, [he] is basically lying on the couch." *Id.* at 24. In addition, as the commissioner observes, *see* Opposition at 17, Dr. Pella expressly stated that, for the period from January 2013 through April 2015, the RFC that he set forth took into account the variable nature of the plaintiff's condition and the fact that, some days, he would have more fatigue, muscle weakness, and cognitive issues than on other days, *see* Record at 78. Dr. Pella further explained, "[b]y sedentary, I believe that's the baseline that [the plaintiff] should be able to do sedentary on an ongoing basis, despite the varying spikes and valleys in his symptoms." *Id.*

In short, the ALJ's evaluation of the plaintiff's statements of his symptoms and limitations suffices to survive the deferential standard of review that continues to apply following the adoption

of SSR 16-3p, apart from the analysis of the "credibility" of a claimant's allegations. *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); SSR 16-3p at 665 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.").

## IV. Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion for a sentence six remand be **DENIED** and that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge